UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MIGUEL A. GUERRERO,                                    :

                Plaintiff,              : **REPORT and RECOMMENDATION**

      -against-                              :      07 Civ. 3986 (SHS)(KNF)

FIRE DEPARTMENT, CITY OF NEW YORK,       :
LIEUTENANT DESANTIS, CHIEF PASCALE,
                                :
              Defendants.
----------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Miguel A. Guerrero ("Guerrero"), proceeding pro se, brought the above-captioned action

alleging discrimination, based on race, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"). In his amended complaint, Guerrero identified his race as Hispanic. According to

Guerrero, the defendants: (a) subjected him to unequal terms and conditions of employment and

a hostile work environment; (b) retaliated against him; and (c) terminated his employment

unlawfully. In addition, the plaintiff contends the defendants violated rights provided to him

through the Family and Medical Leave Act of 1993 ("FMLA").

Before the Court is the defendants' Fed. R. Civ. P. 56 motion for summary judgment.

The defendants maintain they are entitled to judgment as a matter of law because: (1) some of the

claims asserted by the plaintiff are barred by the applicable statute of limitations; (2) Guerrero's

amended complaint is barred by the doctrine of collateral estoppel; (3) Guerrero cannot establish

his race-based claim of discrimination; (4) the retaliation claim made by the plaintiff has not been

established; (5) Guerrero's hostile work environment claim is either time-barred or has not been

established; and (6) Guerrero has failed to establish the defendants violated FMLA.  Guerrero

elected not to respond to the motion, although the defendants advised him, through a notice

issued in accordance with Local Civil Rule 56.2 of this court, the action might be dismissed, if he

did not respond to their motion.

## BACKGROUND[1]

Guerrero was employed with the New York City Fire Department ("FDNY"), as an

emergency medical technician, from March 1996, through July 2006.  For most of that time,

Guerrero was assigned to perform work at a FDNY facility designated Station 16, which is

located in the Harlem neighborhood of New York County.

Defendant Lieutenant John D. DeSantis ("DeSantis") transferred, from a FDNY facility

in Bronx County, to Station 16, in the summer of 2002.  Guerrero recalls that, prior to DeSantis'

transfer to Station 16, DeSantis would visit that facility.  According to the plaintiff, during those

visits, and continuing after he was transferred to Station 16, DeSantis would brag "about how he

used to harass other people in the Bronx" and mistreat employees with whom he worked.  In

---

[1]The facts recited in this Report are derived primarily from the Local Civil Rule 56.1 statement submitted by the defendants.  However, in several instances, the Court found citations in the Rule 56.1 statement, to the transcript generated from the minutes taken at Guerrero's deposition, were useless, as the defendants failed to provide the Court copies of the requisite pages of the transcript to which they made citation.  For example, the defendants allege, in their Rule 56.1 statement, the plaintiff contacted FDNY's Office of Equal Opportunity to file a complaint regarding defendant John D. DeSantis.  The transcript pages detailing the substance of the complaint, to which the defendants make citation, were not provided to the court. Accordingly, that evidence is not in the record the Court analyzed, while considering the instant motion.

August 2002, DeSantis "scream[ed]" at the plaintiff, in the presence of others, because Guerrero refueled his assigned FDNY vehicle at a New York City Sanitation Department facility and not at his FDNY facility.  Guerrero testified, at the deposition taken of him for this action, that DeSantis' tone was "very loud and harsh."  However, no disciplinary action was taken against the plaintiff, by DeSantis, for refueling his FDNY vehicle on the premises of another city agency.  That fact notwithstanding, Guerrero testified he felt DeSantis was out to get him.  In this regard, Guerrero testified, alternately, that he did not know why DeSantis was out to get him and that DeSantis was out to get him because of Guerrero's race.

On March 5, 2003, Guerrero contacted Station 16, prior to the start of his 3:00 p.m. to 11:00 p.m. tour of duty.  He informed the desk lieutenant a family emergency existed that prevented him from reporting for work.  During his deposition, Guerrero explained that the family emergency was his need to take his "stepdaughter" to an airport.  Guerrero explained further that, the person whom he transported to the airport was not his stepdaughter; rather, she was the 19-year-old daughter of a woman with whom Guerrero had lived in 1997.

When Guerrero contacted Station 16 on March 5, 2003, he sought to use emergency annual leave to excuse his absence, and he believed his request had been granted.  However, when he returned to work, the plaintiff learned that DeSantis had indicated, on Guerrero's sign-in sheet, his March 5, 2003 absence would be without pay.  Moreover, although DeSantis supervised employees assigned to a morning tour of duty at Station 16 and, thus, was not Guerrero's immediate supervisor, because Guerrero was assigned to a later tour of duty, the plaintiff recalled that DeSantis told "everybody" in the Station he wanted to "write [the plaintiff] up" for absenting himself from work without leave.  At the time of his deposition, Guerrero

could not identify any FDNY employee assigned to Station 16 who informed him of having had a conversation with DeSantis, during which DeSantis expressed the desire to "write [the plaintiff] up" for being absent without leave.  Furthermore, when asked whether DeSantis wanted to write him up because of the plaintiff's race, Guerrero testified DeSantis "never mentioned anything about my race to me."  The record does not indicate that DeSantis ever "wrote the plaintiff up" for being absent without leave.

In April 2004, Guerrero was arrested, off duty, for driving under the influence.  As a result, FDNY placed him on restricted duty, requiring Guerrero to remain on the premises of Station 16 while performing his assigned tasks.  Guerrero remained in restricted duty status until July 2006.

While in restricted duty status, Guerrero garnered 32 disciplinary charges, arising out of three incidents.  FDNY alleged, based on observations made by its investigatory personnel, Guerrero abandoned his post, on August 19, 2005, and traveled from Station 16's Manhattan location to Bronx County, where he met two women and dined with them.  Furthermore, FDNY accused Guerrero of abandoning his post, at Station 16, on August 31, 2005.  It claimed the plaintiff was observed operating his personal motor vehicle in Bronx County and conducting personal business, while on duty.  According to FDNY, Guerrero failed to notify his supervisor of his absence from his post and made false entries on his time sheet for that day.  In addition, FDNY alleged Guerrero: (a) abandoned his post on September 1, 2005; (b) failed to notify his supervisor of his absence from his post; (c) purchased alcohol, while on duty; (d) consumed alcohol with two other FDNY employees, while on duty; and (e) recorded falsely the hours he worked on that date.  On September 2, 2005, Guerrero was suspended from work for 30 days,

-4-

based upon the misconduct FDNY alleged he had engaged in, on September 1, 2005.

Defendant FDNY Division Chief Frances Pascale ("Pascale") determined Guerrero would be assigned to work at the agency's Medical Equipment Unit ("MEU"), when his 30-day suspension expired, because he would receive a greater degree of supervision at MEU than he had received at Station 16 and would be required to sign in and sign out at the beginning and end of his assigned tour of duty.  According to Pascale, "MEU is responsible for the research and development, purchase, maintenance, distribution and repair of all medical equipment used by the FDNY.  Employees assigned to MEU prepare specifications for the purchase of medical equipment, perform acceptance testing to ensure medical equipment that is supplied meets specifications and performs properly, maintain an inventory of its equipment and parts, perform preventative maintenance on medical equipment used on FDNY ambulances and fire apparatus and provide specialized decontamination of biomedical equipment contaminated through patient contact."  Guerrero maintains he was assigned to MEU "[b]ecause I was [] Hispanic.  That is how [Pascale] deals with it."  According to the plaintiff, "[Pascale] usually transfers all the Hispanics" to Station 16.  "She transferred everybody that was Hispanic," who was involved in "[a]ny adverse situation out of the station.  She would transfer [the person] and dump [the person] in Harlem."

Although Guerrero suffered no change in job title, salary or benefits, due to his assignment to MEU, the tour of duty he was given, 8:00 a.m. to 4:00 p.m., was earlier than the tour of duty he had before his 30-day suspension from work.[2]  Guerrero testified he could not

---

[2]The record evidence establishes, that at different times, Guerrero worked a 3:00 p.m. to 11:00 p.m. tour of duty and a 5:00 p.m. to 1:00 a.m. tour of duty.  In August 2005, immediately
(continued...)

work his assigned MEU tour of duty, because he had to take care of his ill mother, during the morning hours.  Therefore, beginning on or about October 3, 2005, when Guerrero was to commence his MEU tenure, and on "every day for about four months" thereafter, he placed a telephone call to Station 16, indicating he would not be reporting for work.  According to Guerrero, he ceased making the telephone calls after a FDNY supervisor, Captain Russo, acknowledged his awareness of the plaintiff's situation and advised the plaintiff he need not continue making the daily telephone call.

Guerrero filed a grievance regarding his assignment to MEU.  In that grievance, the plaintiff did not allege his assignment to MEU was race-based; rather, he asserted the transfer to MEU, from Station 16, was for disciplinary reasons.  A Step II grievance conference was conducted in response to the grievance Guerrero lodged.  FDNY's Deputy Director of Labor Relations denied Guerrero's grievance, finding that Guerrero's assignment to MEU "did not violate any provision of the EMS Operating Guide."  Although Guerrero's grievance had an unsuccessful outcome for him, Guerrero elected not to report to MEU.  Therefore, for nine months, between October 2005 and July 2006, Guerrero did not report for work at any FDNY facility and did not perform any assignment for the agency.

In October 2005, Guerrero was served with charges and specifications pertinent to his conduct in August and September 2005.  A disciplinary hearing was conducted by the New York City Office of Administrative Trials and Hearings ("OATH"), on April 24 and 25, 2006.  The presiding administrative law judge ("ALJ") found the plaintiff guilty of all charges considered at

---

[2](...continued)
prior to his 30-day suspension, Guerrero was assigned a tour of duty commencing at 5:00 p.m.

the hearing.  Thereafter, the ALJ recommended, based on his review of Guerrero's personnel record, which included a "significant disciplinary history," and the gravity of the charges that were the subject of the hearing, that Guerrero's employment, with FDNY, be terminated. FDNY's commissioner adopted the ALJ's recommendation and terminated Guerrero's employment, effective July 31, 2006.

Guerrero appealed from that determination to the New York State Supreme Court, Kings County, via a New York Civil Practice Law and Rules ("CPLR") Article 78 petition.  Through his petition, Guerrero sought an order and judgment setting aside or reducing the termination penalty, which he maintained was arbitrary, capricious and excessive.  Furthermore, Guerrero asserted the FDNY commissioner abused his discretion, when he imposed the penalty.  It appears, from the record, Guerrero's Article 78 petition was transferred to the New York State Supreme Court, Appellate Division, Second Department, for resolution.  That court found, based on the entire record developed before the ALJ, the FDNY commissioner's determination, to terminate Guerrero's employment for committing acts of misconduct, was supported by substantial evidence and should not be set aside.  See CPLR § 7803(4); Mtr. of Guerrero, 53 A.D.3d 615, 862 N.Y.S.2d 104 (App. Div. 2d Dep't 2008).

Guerrero alleged, at his deposition, that the disciplinary charges were preferred against him because of his race.  Guerrero explained that FDNY uses its "discretion to favor Caucasians instead of African-Americans and Hispanic-Americans."  According to the plaintiff, "[t]heir discretion is never favorable to Hispanics.  They will bend over backward.  And that is what happened to me in my incident."  Guerrero recounted having read in a newspaper that a firefighter, who the plaintiff believed was not in New York State, "was paid thousands of dollars

by the City.  And the fire department allowed him to retire."  This evidenced, for Guerrero, that

FDNY uses "discretion to prefer Caucasians over Hispanics."  In further support of this

contention, that FDNY exercises its discretion in a race-based disparate fashion, the plaintiff

testified he had read about a friend, Edward Ortiz ("Ortiz"), who had been investigated for

medical documentation he submitted.  Guerrero predicted Ortiz's employment would be

terminated.

In February 2006, Guerrero filed a complaint, with the New York City Commission on

Human Rights ("CCHR"), charging FDNY, DeSantis and Pascale with unlawful discriminatory

practices, in violation of New York City's Administrative Code.[3]  Guerrero alleged FDNY,

DeSantis and Pascale harassed him and subjected him to a hostile work environment because of

his race and national origin and, furthermore, did so in retaliation for his opposing

discrimination.  Guerrero maintained that DeSantis refused him overtime pay, denied his

emergency leave request, over-scrutinized his work and attendance and issued him unwarranted

disciplinary memoranda.  Guerrero also asserted Pascale subjected him to a retaliatory transfer to

MEU, rather than take remedial action to address the workplace tension that existed between him

and DeSantis.  In addition, Guerrero alleged his October 2005 transfer to MEU required him to

work a morning tour of duty, instead of an evening tour of duty, which he could not do, owing to

his familial obligation to care for his ailing mother, during the daytime hours.  According to

Guerrero, instead of accommodating him, by assigning him to an evening tour of duty, FDNY

---

[3]Although Guerrero testified, at his deposition, that he filed a complaint, with FDNY's
EEO office, about DeSantis, the record is silent with respect to when that complaint was filed.

initiated disciplinary proceedings against him, which resulted in the termination of his employment.

CCHR investigated Guerrero's charge of discrimination and dismissed his complaint, upon finding no probable cause to believe the defendants engaged in unlawful discriminatory practices, as Guerrero had alleged.  Thereafter, the United States Equal Employment Opportunity Commission ("EEOC") adopted the findings made by CCHR and, in January 2007, provided Guerrero with a notice of his right to commence a civil action, under federal law, based on the CCHR charge of discrimination he had lodged against FDNY, DeSantis and Pascale.  The instant action followed.

## DISCUSSION

*Standard of Review for Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911, 118 S. Ct. 2075 (1998).  When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."  L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  "A fact is

'material' for these purposes if it 'might affect the outcome of the suit under the governing law

. . . .' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208,

212 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 [1986]).

Federal Rule of Civil Procedure 56(e) provides that, if the non-moving party fails to

oppose a summary judgment motion, "summary judgment should, if appropriate, be entered

against that party." However, when the non-moving party does not submit a response to a

summary judgment motion, "the district court may not grant the motion without first examining

the moving party's submission to determine if it has met its burden of demonstrating that no

material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). "If

the evidence submitted in support of the summary judgment motion does not meet the movant's

burden of production, then 'summary judgment must be denied even if no opposing evidentiary

matter is presented.'" Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co., 373 F.3d 241,

244 (2d Cir. 2004) (quoting Amaker, 274 F.3d at 681) (emphasis omitted). In determining

whether the moving party has demonstrated no genuine issue for trial exists, "the district court

may not rely solely on the statement of undisputed facts contained in the moving party's Rule

56.1 statement," but must "be satisfied that the citation to evidence in the record supports the

assertion." Id. (citing Giannullo v. City of N.Y., 322 F.3d 139, 143 n.5 [2d Cir. 2003]).

*Statute of Limitations*

In a state or locality with a fair employment agency, a charge of discrimination

made pursuant to Title VII must be filed with the EEOC within 300 days of the alleged

discrimination or within 30 days of notice of termination of the state's or the locality's proceedings, whichever comes first.  See Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996); 42 U.S.C. § 2000e-(5)(e)(1).  Guerrero filed his complaint of discrimination with CCHR, a municipal fair employment agency, on February 3, 2006.[4]  Therefore, any allegations of race-based discrimination or retaliation that occurred prior to April 9, 2005, (300 days before February 3, 2006), are time-barred and cannot be addressed through this action.  Accordingly, Guerrero's contentions, that the disciplinary charges made against him, in October 2005, and his October 2005 assignment to MEU, were race-based discriminatory and retaliatory acts, are the only viable claims subject to the instant motion, since the plaintiff's remaining claims are without the 300-day filing period.

*Collateral Estoppel*

The Full Faith and Credit Statute, 28 U.S.C. § 1738, obligates federal courts to give the same preclusive effect to a state-court judgment(s) that would be accorded in the state where the judgment(s) was rendered.  See Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889 (1982).  In New York, under the equitable doctrine of collateral estoppel or issue preclusion, a party is not permitted to relitigate an issue decided against the party previously if: (a) "the identical issue was necessarily decided in the prior action and is decisive in the present action"; and (b) "the party to be precluded from relitigating an issue [had] a full and fair opportunity to contest the prior determination."  D'Arata v. New York Cent. Mut. Fire Ins. Co.,

---

[4]Guerrero's CCHR complaint contains text indicating Guerrero authorized CCHR "to accept [his] verified complaint on behalf of the Equal Employment Opportunity Commission."

76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 26-27 (1990).

The defendants maintain Guerrero is barred, by the doctrine of collateral estoppel, from relitigating, in this forum, whether his termination was based on discriminatory or retaliatory reasons, because he "has been previously afforded two (2) opportunities to fully litigate his instant allegations, i.e., his OATH hearing and the Article 78 proceeding."

In support of their position, the defendants make citation to Latino Officers Ass'n, et al. v. The City of New York, et al., 253 F. Supp. 2d 771 (S.D.N.Y. 2003) and Richardson v. City of New York, 2004 WL 325631 (S.D.N.Y. Feb. 20, 2004).[5]  In both cases, the court held that "where an Article 78 petition seeks annulment of a [sic] employment disciplinary decision on the ground that it was discriminatory or retaliatory, a determination by the state courts that the decision was supported by substantial evidence necessarily implie[s] rejection of [the] claim that [the] termination was discriminatory and retaliatory and thus forecloses a similar contention in a subsequent federal action."  Richardson, 2004 WL 325631, at *1 (internal quotation marks and citation omitted).  In both Latino Officers Ass'n and Richardson, the Article 78 courts at issue were presented with petitions alleging race-based discrimination was a factor in the employer's respective decisions to terminate the petitioners.

In the case at bar, the plaintiff petitioned the New York State Supreme Court "for a Judgment [:(a)] annulling the determination of the [FDNY commissioner] dismissing [Guerrero] from his position as an Emergency Medical Technician [; and (b)] setting aside or reducing the penalty [, termination,] as being excessive."  Guerrero never alleged, in his Article 78 petition,

---

[5]A copy of all unreported cases, to which citation has been made in this document, will be provided to the plaintiff with a copy of this Report.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

that the disciplinary charges and ensuing employment termination or his assignment to MEU were race-based or retaliatory.  Moreover, the record before the Court does not indicate the plaintiff made such assertions in the OATH proceeding.  In fact, Guerrero could not have claimed, at the OATH proceeding, that his assignment to MEU was retaliation for filing a CCHR complaint, because his October 2005 assignment to MEU predated, by four months, his February 2006 CCHR complaint.  Consequently, the defendants' contention, that Guerrero had two opportunities – one at OATH and the other through the Article 78 proceeding – "to fully litigate" these allegations, is wrong.  Neither the issue of unlawful race-based discrimination nor the issue of retaliation for filing a CCHR complaint,  "was necessarily decided" in the administrative or judicial proceedings, as neither issue was raised in either proceeding.  D'Arata, 76 N.Y.2d at 664, 563 N.Y.S.2d at 26; Owens v. New York City Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991). Accordingly, the equitable doctrine of collateral estoppel does not bar Guerrero from pursuing those claims through this action.  However, Guerrero cannot relitigate, in this action, the facts pertinent to the charges that he abandoned his post, falsified his time and attendance records and consumed alcohol while on duty, since these factual issues were fully and fairly explored and decided against him, in the administrative and state-court proceedings.  Thus, the doctrine of collateral estoppel bars Guerrero from relitigating those factual issues in this action.

TITLE VII

*A.  Race-Based Discrimination*

To prevail in a Title VII action, a plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination; "[t]he burden then [shifts] to the employer to articulate some legitimate, nondiscriminatory reason" for its action.  McDonnell Douglas Corp.

v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  If the employer performs that task

successfully, the Title VII plaintiff is afforded an opportunity to demonstrate the employer's

stated reason for its conduct is in fact "a pretext for the sort of discrimination prohibited" by Title

VII.  McDonnell Douglas,  id. at 804, 93 S. Ct. at 1825.

"In order to establish a prima facie case of racial discrimination in firing in violation of []

Title VII, the plaintiff must show that she belongs to a protected class, that she was qualified for

the position, that she was discharged, and that her discharge occurred 'in circumstances giving

rise to an inference of racial discrimination.'"  Hargett v. National Westminster Bank, USA,

78 F.3d 836, 838 (2d Cir. 1996) (quoting Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464

[2d Cir. 1989]); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000).[6]

The defendants maintain Guerrero cannot establish a prima facie case of discrimination,

based on race, with respect either to the termination of his employment, following the

adjudication of disciplinary charges that were lodged against him, or his assignment to MEU.

The defendants do not contest Guerrero's membership in a protected class.  However, they assert

the plaintiff cannot establish that: (1) he was qualified for the position he held with FDNY; (2) he

suffered an adverse employment action, by virtue of his assignment to MEU; and (3) either the

termination of his employment or his assignment to MEU occurred under circumstances that give

rise to an inference of unlawful discrimination, based upon Guerrero's race.

---

[6]As the Supreme Court has noted, due to the differing factual circumstances that will
necessarily attend in Title VII cases, the specifications of the prima facie proof will not always be
applicable in every respect to the variety of factual situations.  See McDonnell Douglas, 411 U.S.
at 802 n.13, 93 S. Ct. at 1824 n.13.  Hence, in Cruz, the court described the third requirement a
plaintiff must satisfy, to establish a prima facie case, as suffering an adverse employment action.

*Qualification for the Position*

According to the defendants, having been found guilty for misconduct and terminated from his position with FDNY, as an emergency medical technician, Guerrero "cannot demonstrate that he was qualified for his position or that his work performance was satisfactory." Therefore, the defendants maintain, he cannot meet his burden of establishing a prima facie case of race-based discrimination.  However, "[t]o show qualification sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff need not show perfect performance or even average performance.  Instead, she need only make the minimal showing that she possesses the basic skills necessary for performance of [the] job." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001) (internal quotation marks and citations omitted).  Where, as here, "discharge is at issue and [an] employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir. 2001).  Guerrero's tenure, as a FDNY emergency medical technician lasted more than ten years.  Furthermore, the termination of his employment, with FDNY, was not occasioned by any allegation of incompetence.  Therefore, the Court finds the defendants' contention, that Guerrero cannot establish a prima facie case of discrimination because he cannot demonstrate he was qualified for his position and performed satisfactorily, is not supported by the record.  Rather, the record indicates Guerrero was qualified for his position.  Accordingly, the Court finds further that this element of Guerrero's prima facie case is satisfied.

*Adverse Employment Action*

"Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Finegold v. the State of New York, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotation marks and citations omitted).  It is uncontested that Guerrero's employment with FDNY was terminated following administratively adjudicated disciplinary charges that had been lodged against him.  Therefore, this prong of the plaintiff's prima facie case of discrimination is also satisfied.

*Inference of Racial Discrimination*

As discussed above, the termination of Guerrero's employment with FDNY was occasioned by his misconduct on three occasions in August and September 2005, when FDNY personnel, other than DeSantis and Pascale, (1) observed the plaintiff away from his assigned post, without authorization, and (2) determined he had reported falsely the hours he worked and consumed alcohol, with FDNY colleagues, while on duty.

Although Guerrero concluded his termination by FDNY was race-based, because the agency habitually exercises its discretion in a manner adverse to Hispanics, he has not presented competent evidence to support his allegation and defeat the defendants' summary judgment motion.  To support his contention, that FDNY uses its discretion one way with respect to Hispanics and another with respect to Caucasians, Guerrero makes citation to two newspaper articles he read.  As recounted by Guerrero, neither article involves a FDNY employee whose employment by the agency was terminated.  One employee, who apparently is Caucasian, resigned from his FDNY position.  The other employee, who may be Hispanic, is still employed by the agency, although Guerrero speculated employment termination loomed large.

Conclusory allegations of discrimination, without more, neither demonstrate that an

-16-

adverse employment action occurred, under circumstances giving rise to an inference of discrimination, nor meet the requirements of Fed. R. Civ. P. 56(e), which a party opposing a summary judgment motion must satisfy, in order to defeat the motion.  See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  The plaintiff was dismissed from his employment after garnering in excess of 30 disciplinary charges, while on restricted duty.  He has proffered no evidence, from which a factfinder would be permitted to infer, that his employment termination occurred under circumstances giving rise to an inference of discrimination.  Therefore, the Court finds that Guerrero has not met his burden of establishing, by a preponderance of the evidence, a prima facie case of racial discrimination respecting the termination of his employment.  See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).  Consequently, the defendants are not obligated to articulate a legitimate nondiscriminatory reason for Guerrero's termination.  See McDonnell Douglas, 411 U.S. at 802-803, 93 S. Ct. at 1824.

*B. Retaliation*

Title VII contains an anti-retaliation provision, which bars an employer from discriminating against an employee because the employee "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000(e)-3(a).  The Supreme Court has explained that Title VII's substantive anti-discrimination provision "seeks to prevent injury to individuals based on who they are, i.e., their status."  While "[t]he anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct."  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 63, 126 S. Ct. 2405, 2412 (2006).  In order to prevail on a Title VII retaliation claim, a plaintiff must establish that: (1) he engaged in protected activity under Title

-17-

VII; (2) his employer was aware of the protected activity; (3) his employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action.  See Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199, 205-206 (2d Cir. 2006).

Guerrero contends his assignment, by Pascale, to MEU, in October 2005, upon the expiration of the 30-day suspension, was race-based and retaliatory.  According to Guerrero, it was Pascale's wont to transfer Hispanics involved in "[a]ny adverse situation" to Harlem's Station 16.  However, in this instance, Guerrero was not transferred to Station 16; he was reassigned to MEU so that he might be supervised more closely than he had been while he was assigned to Station 16.  In any event, the record evidence shows Guerrero cannot establish a prima facie case of retaliation, under Title VII, because, even if one were to assume Guerrero's assignment by Pascale, to MEU, was an adverse employment action, no causal connection exists between Guerrero's protected activity, filing the CCHR complaint, and the adverse action, his assignment to MEU.

In the context of a Title VII retaliation claim, a plaintiff can show a causal connection exists, indirectly, by demonstrating the protected activity was followed closely by discrimination or directly, by showing evidence of discriminatory animus.  See Cosgross v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).  Here, Guerrero's assignment to MEU, in October 2005, preceded, by four months, the CCHR complaint Guerrero filed.  Moreover, Guerrero's bald assertion that Pascale exhibited race-based animus toward Hispanics by transferring them to Station 16, without more, is unavailing, because, Pascale did not assign him to Station 16; she removed him from that facility and assigned him to MEU.  Thus, Guerrero has not demonstrated,

either indirectly or directly, a causal connection exists between his protective activity and his assignment to MEU. Accordingly, summary judgment for the defendants, on the plaintiff's retaliation claim, is warranted.[7]

*Family and Medical Leave Act*

Under FMLA "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). An eligible employee, as that term is used in FMLA, "means an employee who has been employed – (i) for at least 12 months by the employer with respect to whom leave is requested under [29 U.S.C. § 2612]; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(i), (ii). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A healthcare provider, under FMLA, includes, among others, a physician or surgeon authorized to practice medicine by the state in which he or she practices. <u>See</u> 29 U.S.C. § 2611(6)(A).

The record before the Court does not demonstrate that Guerrero ever applied to his employer for a leave of absence from work, pursuant to FMLA. Furthermore, no evidence in the

---

[7]Although not asserted by the defendants, through their motion, in this judicial circuit, individuals serving in a supervisory capacity, with respect to a Title VII plaintiff, cannot be held personally liable to the plaintiff for a Title VII violation. <u>See</u> <u>Wrighten v. Glowski</u>, 232 F.3d 119, 120 (2d Cir. 2000). On this basis alone, DeSantis and Pascale are entitled to summary judgment.

record establishes Guerrero ever provided sufficient information about his mother and her

medical condition such that his employer might have understood that his refusal to work at MEU

was a consequence of his need to care for a parent who had a "serious health condition," as that

phrase is used in FMLA.  At his deposition, Guerrero indicated he did not report to work at MEU

"because Ms. Pascale insisted that I go to MEU.  And I did a grievance with the union for that

unlawful transfer.  And she wouldn't accommodate me."  However, the grievance process

established Guerrero's assignment to MEU was not unlawful, in that it did not "violate any

provision of the EMS Operating Guide."  To prevail on a FMLA violation claim, an employee

must establish that his employer interfered with, restrained, or denied him rights protected by

FMLA and, further, that he has been prejudiced by the employer's violation.  See Ragsdale v.

Wolverine World Wide, Inc., 535 U.S. 81, 89, 122 S. Ct. 1155, 1161 (2002).  Guerrero has done

neither.  Accordingly, the Court finds his FMLA violation claim meritless.  Consequently,

summary judgment for the defendants on that claim is appropriate.

## IV.  RECOMMENDATION

For the reasons set forth above, the defendants' motion for summary judgment, Docket

Entry No. 26, should be granted.

## V.  FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties have ten (10) days from service of the Report to file written objections.  See also Fed.

R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of

Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United

States District Judge, 500 Pearl Street, Room 1010, New York, New York 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Stein.  FAILURE

TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn,

474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir.

1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d

55, 57-59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
       June 2, 2009

Respectfully submitted,

Kevin Nathaniel Fox

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Miguel A. Guerrero
Andrea M. O'Connor, Esq.

-21-